UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| **KAREN SUZANNE BISSELL** | * | **CIVIL ACTION NO. 17-1294** |
| **VERSUS** | * | **JUDGE S. MAURICE HICKS, JR.** |
| **NANCY A. BERRYHILL, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

**Background & Procedural History**

Karen Bissell filed the instant application for Title II Disability Insurance Benefits on April 15, 2015. (Tr. 20, 132-133). She alleged disability as of December 16, 2013, because of arthritis, high blood pressure, high cholesterol, and diverticulitis. (Tr. 147). Her claims were denied at the initial stage of the administrative process. (Tr. 55-65, 70-73). Thereafter, Bissell requested and received a May 12, 2016, hearing before an Administrative Law Judge ("ALJ"). (Tr. 32-54). However, in an August 3, 2016, written decision, the ALJ determined that Bissell was not disabled under the Act, finding at step four of the sequential evaluation process that she was able to return to her past relevant work as a data entry clerk and office manager. (Tr. 17-28). Bissell appealed the adverse decision to the Appeals Council. On August 14, 2017, however, the

Appeals Council denied Bissell's request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On October 10, 2017, Bissell sought review before this court. She alleges several assignments of error primarily associated with the ALJ's step four finding that the claimant could return to her past relevant work. Briefing is complete; the matter is before the court.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical

or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

<b><u>Sequential Evaluation Process in this Case</u></b>

**I.     Steps One, Two, and Three**

The ALJ determined at step one of the sequential evaluation process that Bissell had not engaged in substantial gainful activity during the relevant period. (Tr. 22). At step two, she found that Bissell suffers severe impairments of obesity, osteoarthritis in the knees and hips, and history of diverticulitis. (Tr. 22-23).[1] She concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 23).

**II.    Residual Functional Capacity Assessment**

The ALJ next determined that Bissell retained the residual functional capacity ("RFC") to perform sedentary work,[2] except that she would need to change position on an as-

---

[1] The ALJ also determined that plaintiff's impairments of high cholesterol, hypertension, and early diabetes II were not severe. (Tr. 16). Once a severe impairment is determined to exist, however, all medically determinable impairments must be considered in the remaining steps of the sequential analysis. See 20 C.F.R. §§ 404.1520(e) and 404.1545.

[2] Sedentary work entails:
> . . . lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a

needed basis for comfort from sitting to standing briefly, or if standing, to sit down; and may need to take four or more brief bathroom breaks per day. (Tr. 23-27).

### III. Step Four

At step four of the sequential evaluation process, the ALJ employed a vocational expert ("VE") to find that Bissell was able to return to her past relevant work as a data entry clerk and office manager, both as she actually performed those jobs, and as those jobs are generally performed in the national economy. (Tr. 27).[3]

### Analysis

In her appeal to this court, plaintiff attacks the legal sufficiency of the ALJ's step four finding via multiple, converging angles. The court will address her arguments, out of turn.

a) <u>Frequency and Length of Bathroom Breaks</u>

Plaintiff argues that the ALJ violated the maxim that the hypothetical posed to the VE must reasonably incorporate the disabilities and limitations recognized by the ALJ. *Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994). Specifically, she seems to argue that although the ALJ asked the VE whether an employer would permit the hypothetical claimant to take "four or more bathroom breaks per day," the ALJ then failed to follow-up with the VE to determine precisely how many bathroom breaks would be permitted. She later argued that the ALJ neglected to define the length of each bathroom break, and disregarded the need to quantify the number of

---

certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
20 C.F.R. 404.1567(a).

[3] Past relevant work is defined as "the actual demands of past work or 'the functional demands ... of the occupation as generally required by employers throughout the national economy.'" *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987) (citing, Social Security Ruling 82-61)

breaks.

> However, the following exchange between the ALJ and the VE proves instructive:
>
> ALJ: How about bathroom breaks if she needed to take four or more bathroom breaks per day, would that be permitted?
>
> VE: No employer wishes to restrict bathroom breaks. *The normal break periods that occur in a work setting plus additional opportunities to go to the bathroom would probably be accommodated* and not create a problem until it began to reach the point where bathroom breaks were 20 minutes a piece, 15 minutes a piece. Maybe perhaps even 10 minutes a piece and occurring once every hour to every 45 minutes, at that rate, work becomes unavailable to the hypothetical individual.
>
> ALJ: How about if she needed say one or two breaks a day that were extensive . . . needed to have a break where she went to the bathroom . . . so it took 10 to 15 minutes, if that happened twice a day, would that be permitted?
>
> VE: It goes back to this medically – medical issue in the Americans with Disability Acts and employers not wanting employees to be bathroom deprived. But, I will say under normal circumstances, one additional break would all – would be all that would be customarily provided for an employee. Anything above the one additional break is going to be result in work becoming not available to that hypothetical person over a period of time.

(Tr. 50) (emphasis added).

The court notes that in an eight hour workday, a worker typically is allocated a lunch period, plus two breaks.[4] Therefore, when the VE testified that an employer would permit one *additional* break, it means that the hypothetical claimant would be able to take a total of four bathroom breaks during the workday. Also, according to the VE, so long as the restroom breaks did not exceed ten minutes each on an hourly basis, then the breaks would be permitted.

---

[4] *See* POLICY INTERPRETATION RULING TITLES II AND XVI: DETERMINING CAPABILITY TO DO OTHER WORK--IMPLICATIONS OF A RESIDUAL FUNCTIONAL CAPACITY FOR LESS THAN A FULL RANGE OF SEDENTARY WORK, Social Security Ruling No. 96-9p.

Plaintiff contends that because the ALJ's RFC allowed for "four *or more*" brief bathroom breaks, this could mean four or forty breaks of indeterminate length. At the hearing, however, plaintiff estimated that she needed four bathroom breaks during a workday. (Tr. 46-47). In addition, the ALJ rejected plaintiff's allegations of urinary and fecal incontinence. (Tr. 27). Therefore, her bathroom breaks likely would not exceed five minutes, and certainly not ten.

In sum, although the ALJ's RFC was imprecise on the number of bathroom breaks, the evidence substantiates that plaintiff required but four brief breaks, which the VE confirmed would be permissible. In any event, an ALJ's hypothetical is not defective when, as here, the claimant is afforded an adequate opportunity to correct any real or asserted deficiencies in the ALJ's question. *Hardman v. Colvin*, 820 F.3d 142, 149 (5th Cir.2016)

b)      Frequency and Extent of the Sit/Stand Option

Social Security Ruling 96-9p provides that "[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." (SSR 96-9p). Plaintiff contends that the ALJ transgressed SSR 96-9p by failing to define the frequency of the assigned sit/stand option. More directly, plaintiff asserted that although the ALJ found that Bissell would need to change position on an "as needed" basis, she did not quantify what "as needed" meant in an eight hour day.

At the outset, the court agrees that "as needed," is quite broad, but that is precisely what the phrase conveys. It means that the claimant can alternate standing or sitting throughout the workday – at the claimant/worker's whim. However, the ALJ clarified her sit/stand limitation in her hypothetical to the VE as follows: "assume she would need to change position on an as needed basis for comfort, meaning maybe shifting her chair or stand up briefly, walk around a little bit if she was on her feet and her legs or back were bothering her, sit down; would any of

her past jobs allow her that option to change position as needed?" (Tr. 49).[5] In response, the VE opined that "[y]our Honor, I believe they would the way they're generally performed and as the hypothetical is stated, short periods of time, yes, I think they would especially the office manager position." *Id*.

In short, any error was harmless. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (ALJ's omission does not require remand unless it affected claimant's substantial rights)

c)  Unaddressed Conflicts between VE Testimony and the DOT

Plaintiff further argues that the ALJ relied upon unresolved conflicts between the VE testimony and the *Dictionary of Occupational Titles* ("DOT") without first obtaining an explanation for the discrepancy from the VE as required by Social Security Ruling 00-4p.[6] Specifically, plaintiff argues that the DOT does not contemplate a sit/stand option.

Social Security Ruling 00-4p provides that when there is an apparent, unresolved conflict between VE evidence and the DOT, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE evidence in her decision. *See* SSR 00-4p. In addition, when a VE provides evidence about the requirements of a job or occupation, the ALJ has an affirmative responsibility to inquire about any possible conflict between the VE testimony and information provided in the DOT. *Id*.

Here, despite a statement in the ALJ's decision that suggests the contrary, *see* Tr. 27, the ALJ did not directly query the ALJ concerning conflicts between his testimony and the DOT.

---

[5] The ALJ's description of her sit/stand limitation is substantially supported by plaintiff's own testimony. *See* Tr. 42.

[6] SSR 00-4P: TITLES II AND XVI: USE OF VOCATIONAL EXPERT AND VOCATIONAL SPECIALIST EVIDENCE, AND OTHER RELIABLE OCCUPATIONAL INFORMATION IN DISABILITY DECISIONS.

Nonetheless, "[p]rocedural perfection in administrative proceedings is not required." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988). Procedural improprieties "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988).

Plaintiff has not made the requisite showing here. First, there does not appear to be an actual *conflict* between any provision of the DOT and the VE's testimony regarding the sit/stand option, because the DOT does not address sit/stand options. Indeed, according to Social Security Ruling 00-4p, information provided by a VE that is not included in the DOT is a reasonable explanation for a conflict with the DOT. *See* SSR 00-4p.

Second, the ALJ effectively *did* elicit an explanation from the VE for any conflicts between his testimony and the DOT, as illustrated by the following exchange:

> ALJ: How long have you worked as a vocational rehabilitation counselor or vocational rehabilitation – would that be the right term, counselor or —
>
> VE: Well, I started in 1968 as a psychological associate with the vocational rehabilitation center. So, I've worked there for several years, continued to do vocational work, although a lot of my activity was involved in administration from 1985 to 2000 – 1998, excuse me, whenever I began to do vocational counseling on a full-time basis.
>
> ALJ: So, basically your observations, how the work place works and how that differs from what's written in the Dictionary of Occupational Titles, you started doing this type of work in 1968, so you've been doing it for a while.
>
> VE: Yes. Yes, Your Honor.

(Tr. 52).

In other words, the VE attributed any differences between his testimony and the DOT to his many years of vocational counseling. *See Barratt v. Astrue*, 2008 WL 2325636 (5th Cir. Jun. 6, 2008) (unpubl.) (VE's response itself to the ALJ's hypothetical provided an adequate basis for

9

the ALJ to rely on the VE's testimony, despite its conflict with the DOT).

d) <u>The VE's Characterization of Plaintiff's Past Relevant Work</u>

Plaintiff next takes issue with the VE's characterization of plaintiff's past relevant work as that of a data entry clerk, DOT # 203.582-054 and Office Manager, DOT # 169.167-034 – both of which are performed at the *sedentary* exertional level. (Tr. 48-49). Instead, plaintiff emphasizes that the Disability Determination Services (DDS) adjudicator categorized her past jobs as Unit Clerk, DOT # 245.362-014 and Administrative Clerk, DOT # 219.362-010, which are performed at the *light* exertional level. (Tr. 64). Bissell contends that the ALJ failed to resolve this discrepancy in the record, and that if she had, plaintiff's description of her past relevant work was more consistent with the DDS adjudicator's finding than that of the VE.

Initially, the court observes that a disability adjudicator is not a vocational expert. Consequently, the ALJ did not err by implicitly favoring the opinion of Charles Smith – a licenced professional rehabilitation counselor, who, at the time of the hearing, had almost 16 years experience serving as an independent vocational expert witness with the Social Security Administration's Office of Disability Adjudication and Review. (Tr. 201-202). According to the Fifth Circuit:

> [t]he value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed. A vocational expert is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job.

*Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986).

Moreover, before eliciting Mr. Smith's opinion regarding the exertional capacity and DOT number for plaintiff's past work, the ALJ confirmed that Mr. Smith had the opportunity to study plaintiff's vocational history and to hear her testimony regarding her prior jobs. (Tr. 48).

Accordingly, the record reflects an adequate basis to support the ALJ's decision to defer to the expertise of the VE. *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000).

>Furthermore, it is an opportune time to recite the Fifth Circuit's admonition that
>
>". . . claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing."

*Carey, supra*.

Certainly, if plaintiff harbored any doubts concerning the VE's characterization of her prior work, she was obliged to raise the alleged inconsistency and to press the issue upon cross-examination, rather than remaining silent and reserving the matter as a basis for a subsequent appeal.

e) <u>Past Relevant Work as a Composite Job</u>

Related to her prior argument, plaintiff argues that her past relevant work actually was a composite job which she performed at the light exertional level. Per Social Security Ruling 82-61:

>composite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT. Such situations will be evaluated according to the particular facts of each individual case. **For those instances where available documentation and vocational resource material are not sufficient to determine how a particular job is usually performed, it may be necessary to utilize the services of a vocational specialist or vocational expert**.

SSR 82-61 (in pertinent part) (emphasis added).

Of course, the ALJ fully complied with SSR 82-61 in this case. She consulted a vocational expert who listened to Bissell's testimony regarding her past relevant work, reviewed Bissell's vocational history, and opined that her prior jobs were properly classified as a data entry clerk and office manager, which are generally performed at the sedentary exertional level. (Tr. 48-

49).[7]

Again, if plaintiff harbored any doubts concerning the VE's characterization of her prior work, she was obliged to emphasize the alleged inconsistency and to press the issue upon cross-examination. *Carey, supra*. Whilst an ALJ has a duty to make a sufficient inquiry into a claim, the claimant retains the burden to establish that she is unable to perform past relevant work. *Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990) (citations omitted).

f) <u>Postural Limitations Omitted from the RFC</u>

Plaintiff's final assignment of error is that, despite purporting to assign "great weight" to the opinions of the consultative physician, Dr. Skweres, and the non-examining agency physician, Dr. Hollis, the ALJ inexplicably omitted several limitations of functioning endorsed by these physicians from her RFC. Specifically, Dr. Hollis limited Bissell to occasionally climbing ramps/stairs, ladders, ropes, scaffolds, and occasionally balancing, stooping, kneeling, crouching, and crawling. (Tr. 62-63). It is manifest, however, that Dr. Hollis's additional limitations do not significantly erode the capacity for sedentary work. *See* SSR 96-9p.[8]

Further, although Dr. Skweres opined that Bissell "*should* avoid bending over, squatting, and reaching overhead," he did not restrict her from ever performing these activities. (Tr. 262) (emphasis added). Moreover, there is no indication that *overhead* reaching was a component of

---

[7] Plaintiff asserts that if her past relevant work constituted a composite job, then it cannot be utilized for purposes of a step four finding that she could return to that work as it is "generally performed in the national economy." *See* Program Operations Manual System (POMS) DI 25005.020(B). Here, however, the VE and the ALJ did *not* find that plaintiff's past relevant work constituted a composite job, and therefore, by its terms, this restriction does not apply.

[8] "Postural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work." *Id*. Similarly, only the occasional ability to stoop is required at the sedentary level. *Id*.

plaintiff's past relevant work  Id.  Also, when asked at the hearing, plaintiff did not deny that she could bend or stoop to pick up small objects from the floor, albeit she replied that if she did, it would be very painful.  (Tr. 47).

The court further observes that, at the hearing, plaintiff admitted that she washed a load of clothes every day, and loaded the dishwasher.  (Tr. 41).  In July 2015, Bissell reported to the physical therapist that she had only "a little bit of difficulty" with lifting objects like a bag of groceries from the floor.  (Tr. 285-286).  She also reported only a little bit of difficulty with performing her usual hobbies, recreational or sport activities.  Id.  Moreover, she only had moderate difficulties with doing her usual work, housework, or school activities.  Id.

In other words, plaintiff's own activities substantially support the ALJ's implicit decision to discount the physicians' additional limitations of functioning.

g)      Additional Argument and Closing Impression

Throughout her brief(s), Bissell maintained that she could not perform her past relevant work not only as performed generally, but as she actually performed it.  However, plaintiff did not stop working in December 2013 because she no longer could perform her job.  Rather, Bissell's employer let her go because of plaintiff's recent hospitalization, and because she intended to miss another six weeks of work for a procedure to remove a nodule on her chin.  (Tr. 37-38).  In fact, Bissell collected unemployment insurance for the second and third quarters of 2014, Tr. 37, which meant that she held herself out as ready, willing, and able to work.  Further, when asked at the hearing whether she would have been able to work full-time if she had received a job offer, Bissell candidly admitted that she would have liked to have tried to see if she could work.  (Tr. 37).

Furthermore, it is likely that when, at the hearing, the VE characterized plaintiff's past

relevant work as sedentary, the ALJ, for the sake of expediency, limited her hypothetical and ensuing RFC to the sedentary exertional level, despite the fact that both the consultative and agency physicians, plus plaintiff[9] indicated that she was capable of lifting up to 20 pounds. *See* Tr. 62-63, 262, 41. If the ALJ had properly credited this evidence, then it is clear that Bissell could have performed her past "data entry" work – as she actually performed it. *See* Tr. 159. This finding is confirmed by a vocational consultant from the Office of Quality Review ("OQR"). (Tr. 176-178).[10]

## Conclusion

The ALJ in this case was tasked with determining whether plaintiff was disabled. In so doing, she considered the claimant's testimony, the medical record, and expert opinion evidence. The evidence was not uniform, and according to plaintiff, should have compelled a different result. However, conflicts in the evidence are for the Commissioner to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted). This court may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs

---

[9] As reflected in her activities of daily living (doing a load of laundry daily).

[10] Apparently, the DDS originally proposed to issue a favorable finding of disability in this case. (Tr. 179-180). However, the OQR reviewed the evidence, and reached a contrary result. *Id*. As part of that process, the OQR had a vocational consultant review the record. He opined that not only could Bissell perform her past relevant work, but she also had acquired significant transferrable skills that would require little or no vocational adjustment. (Tr. 177-178). Consequently, notwithstanding plaintiff's protestations to the contrary, even if this matter were propelled beyond step four to step five of the sequential evaluation process, the medical-vocational guidelines would not require a finding of disability. *See* 20 C.F.R. § 404.1569; Rules 201.07 and 202.07, Tables 2 and 3, Appendix 2, Subpart P, Regulations No. 4.

against the Commissioner's decision." *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000).[11] As plaintiff's comprehensive and well-argued brief readily demonstrates, the ALJ's decision was not blemish-free, but procedural perfection in the administrative process is not required, and any errors do not undermine confidence in the decision. *See Mays, supra.*

For the foregoing reasons, the undersigned finds that the Commissioner's determination that plaintiff was not disabled under the Social Security Act, is supported by substantial evidence and remains free of legal error. Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be AFFIRMED, in its entirety, and that this civil action be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR,**

---

[11] Admittedly, this court has expanded upon some of the reasoning provided by the Commissioner for her decision. Generally, courts "only may affirm an agency decision on the basis of the rationale it advanced below." *January v. Astrue*, No. 10-30345, 2010 WL 4386754 (5th Cir. Nov. 5, 2010) (citation omitted). One exception to this rule, however, is harmless error, i.e. absent the alleged error or omission, there is "no realistic possibility" that the ALJ would have reached a different result. *Id*. This exception is applicable here.

**FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 1st day of February 2019.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE